the relation in which he stood as master of the vessel; or, if they did not, the failure must be attributed to their own negligence. After they took so much pains to ascertain the point of time when the negotiation for the vessel was concluded, and when Ruckman became owner, so as to charge him with the stores previously ordered by Jennett, and delayed the delivery till he could become the master, it is difficult to say that they were not cognizant of all the circumstances connected with the transaction, and consequently of the relation in which he stood as master of the vessel. I cannot doubt, therefore, that they are properly chargeable with notice of that relation, if the fact be at all material.

The act of July 29, 1850, provides, that no bill of sale, mortgage, hypothecation, or conveyance of any vessel, &c., shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless the same be recorded in the office of the collector, &c. The second section provides for the recording; and the third, that the collector shall keep an index of such records, inserting, alphabetically, the names of the vendor or mortgagor, and of the vendee or mortgagee, &c. The argument is, that the charter-party in question is a conveyance, within the first section of the act, and, not having been recorded, is, therefore, void as to third persons who have not had actual notice of it, and hence is not in the way of the libellant. There is, undoubtedly, some plausibility in the argument, and some difficulty in answering it. And yet, the instrument in question is so common and well known in the business of commerce, and in the use and employment of vessels, that if congress had intended to embrace it, it would have been most natural to have mentioned it in terms. And the phraseology of "vendor" and "vendee," and "mortgagor" and "mortgagee," used in the third section of the act, to designate every description of conveyance specified in the first, is scarcely appropriate language to define a charter-party. But, be this as it may —and I do not intend to express any definite opinion upon it—it seems to me quite clear that, even conceding the construction contended for, the only consequence would be to subject the vessel to liability in favor of third persons, the same as if no conveyance had been made. Recording acts relate to conflicting interests, and liens acquired in and upon lands and chattels, and are designed to regulate the same. Thus, in the present case, if the Messrs. Bloomfield had had a valid lien upon the vessel for the stores furnished, a previous unrecorded conveyance by the master would be postponed. This is the extent of the act. In my judgment, it has nothing to do with the personal liability of the owner of the vessel. It is important when the question relates to an interest in or claim upon the vessel itself, but not otherwise.

In any view, therefore, that I have been able to take of the case, I think that the decree of the court below was erroneous, and that it must be reversed, with costs.

---

MOTT (SHERMAN v.). See Cases Nos. 12,766 and 12,767.

---

## Case No. 9,882.

### MOTT v. SMITH.

[2 Cranch. C. C. 33.] [1]

Circuit Court, District of Columbia. Nov. Term, 1811.

WRIT—RETURN—COLLATERAL ATTACK—ATTACHMENT.

In an action for a malicious attachment, the official return of the attachment is not conclusive, but may be contradicted by parol.

Case, for a malicious attachment for rent, not due, under the act of Virginia, of 29th November, 1792, p. 154, § 8; the tenant being about to remove.

Mr. Taylor, for defendant, moved the court to instruct the jury that the attachment was not laid, the return of the officer being "not executed by order of the plaintiff," (the present defendant.)

THE COURT (CRANCH, Chief Judge, contra) decided that the return was not conclusive; but that the plaintiff (although he had produced the writ of attachment, and its return, in evidence,) might contradict the return, by parol.

---

MOTT (UNITED STATES v.). See Case No. 15,826.

---

## Case No. 9,883.

### MOTT v. WRIGHT.

[4 Biss. 53.] [2]

Circuit Court, D. Indiana. Nov. Term, 1865.

NOTES—LAW MERCHANT—RULE IN INDIANA—INDORSER—LEX LOCI—DELIVERY.

1. By the law of Indiana, ordinary promissory notes are not governed by the law merchant. But, as a general rule, the indorsee, having first used due diligence by suit to collect such notes from the maker, has his recourse on the indorser.

2. The indorsement of a note is a new, distinct contract; and such contract is governed by the law of the place where it is made, without regard to the law of the place where the note was made.

[Cited in Stubbs v. Colt, 30 Fed. 419.]

3. The contract of indorsement includes two essential things: the writing itself, and the delivery of it to the indorsee. And if the indorsement is written in one state, and delivered to the assignee in another, the law of the latter state controls the contract.

[Cited in Stubbs v. Colt, 30 Fed. 419.]

4. A indorsed notes in Indiana, and sent them by mail to B the indorsee, in New York, where B received them. *Held*, that the indorsement was governed by the law of New York.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]